IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERMELIA RANDOLPH, on behalf of A.R.P., | ) ) ) |
| Plaintiff, | ) ) Case No.   14-cv-1097-JPG-CJP |
| vs. | ) ) ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) |
| Defendant.[1] | ) ) |

**MEMORANDUM and ORDER**

In accordance with 42 U.S.C. § 405(g), plaintiff Jermelia Randolph, on behalf of A.R.P., her minor son, seeks review of the final decision of the Commissioner of Social Security denying A.R.P.'s application for Supplemental Security Income (SSI) Benefits.

**Procedural History**

Jermelia Randolph filed an application for SSI on behalf of her minor son in July 2012, alleging disability beginning on October 18, 2010.  (Tr. 38).  After holding a hearing, ALJ Paul R. Armstrong denied the application for benefits in a decision dated October 17, 2013.  (Tr. 38-53).  The Appeals Council denied review, and the ALJ's decision became the final agency decision subject to judicial review.  (Tr. 4).  Plaintiff exhausted her administrative remedies and filed a timely complaint in this Court.[2]

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  See, *Casey v. Berryhill*, __ F3d. __, 2017 WL 398309 (7th Cir. Jan. 30, 2017).   She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

[2] The Court denied defendant's motion to dismiss the petition as untimely.   See, Doc. 16.

[1]

**Issues Raised by Plaintiff**

Through counsel, plaintiff raises the following arguments:

The ALJ's evaluation of functional equivalence was the product of legal error and unsupported by substantial evidence because the ALJ:

(1) mischaracterized educational records;

(2) ignored some of A.R.P.'s physical impairments;

(3) erroneously weighed some of the opinion evidence; and

(4) failed to assess the weight that should be afforded to Dr. Deppe's opinion.

**Applicable Legal Standards**

A child under the age of 18 is considered disabled if he or she has a medically determinable physical or mental impairment "which results in marked and severe functional limitations" and which has lasted or is expected to last for more than 12 months. 42 U.S.C. §1382c(a)(3)(C)(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §1382c(a)(3)(D).

The determination of childhood disability proceeds by way of a three-step sequential analysis which is set forth in 20 C.F.R. §416.924. The three- step analysis is as follows:

1. Is the child claimant engaged in substantial gainful activity?

2. Does the child have an impairment or combination of impairments that is "severe?"

3. Does the impairment or combination of impairments meet, medically equal, or functionally equal the severity of a listed impairment?

An answer of "yes" to the first question, or "no" to the second or third questions, means that the child is not disabled.

[2]

At step two, an impairment is not "severe" if it is a slight abnormality or a combination of slight abnormalities that cause no more than minimal functional limitations. 20 C.F.R. §416.924(c).

At step three, in order to determine whether the child's impairments functionally equal a listing, the agency considers how the child functions in six domains:

    (1)    acquiring and using information;

    (2)    attending and completing tasks;

    (3)    interacting and relating with others;

    (4)    moving about and manipulating objects;

    (5)    caring for himself; and

    (6)    health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

The child is at listing-level severity where he has marked limitation in two domains of functioning, or extreme limitation in one domain. 20 C.F.R. §416.926a(d). A marked limitation is one which "seriously" interferes with the child's functioning, while an extreme limitation "very seriously" interferes with the child's functioning. 20 C.F.R. §416.926a(e)(2) & (3).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, the task before the Court is not to determine whether A.R.P. was, in fact, disabled. Rather, the question before the Court is whether the ALJ's findings were supported by substantial evidence and whether any errors of law were

made.  See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).   This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).  The reviewing court cannot "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations."  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Armstrong followed the three-step analytical framework described above.  He determined that A.R.P., who was born in May 2005, had the severe impairment of Attention Deficit Hyperactivity Disorder.  This impairment did not meet or medically equal a listed impairment.  He further determined that this impairment did not functionally equal a listing.  With regard to the six domains of functioning, he found that A.R.P. had less than marked limitations in two areas, that is, in acquiring and using information and in attending and completing tasks.  He found that A.R.P. had no limitation in the other four areas.  Therefore, the ALJ concluded that he was not disabled.  (Tr. 38-53).

[4]

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

**1.     Agency Forms**

A.R.P. was born in May 2005, and was about five and one-half years on the alleged onset date of October 18, 2010. (Tr. 183). According to his mother, he was disabled due to hallucinations. (Tr. 198).

A.R.P. was about to enter the second grade when the application was filed in July 2012. He was in special education classes. (Tr. 200-201).

In February 2013, A.R.P.'s mother said that his condition had worsened in that he "stares off a lot and always says someone is talking to him." (Tr. 219). She said he needed help with almost everything he did. (Tr. 221). He was not taking any medications. (Tr. 220). In April and May 2013, the mother said that he was hyperactive and could not sit still. (Tr. 234, 238).

**2.     Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in October 2013. (Tr. 58).

Plaintiff's mother Jermelia Randolph testified that A.R.P. became easily frustrated. He had mood swings. He threw things and slammed doors. He had problems staying focused. (Tr. 66-67). He had been suspended from school for arguing with a teacher, cursing, and locking himself in a closet. (Tr. 72). He was physically active and healthy. (Tr. 74-75). She felt he was disabled because he was not at the grade level that he was supposed to be at. (Tr. 75).

A.R.P. also testified. He told the ALJ that he was in the third grade. He knew his teacher's name. He said he read books. He was able to add two and two but could not answer ten minus seven. He could write his name. (Tr. 61-63).

### 3. Medical Records

A.R.P. was evaluated for focal seizure activity at Cardinal Glennon Children's Medical Center in March 2007. An EEG was normal. (Tr. 458). An MRI of the brain showed focal cortical dysplasia.[3] (Tr. 459).

In January 2008, A.R.P. was evaluated by a neurologist at Cardinal Glennon. A.R.P. had been previously evaluated for developmental delay and microcephaly (small head size). The neurologist reported that A.R.P. had cortical dysplasia, which he thought was the etiology of his small head size and developmental delay. He noted that A.R.P. had made some developmental progress and had not had any seizures. He was in speech therapy. The family was concerned about developmental related learning and discipline, and the doctor asked the social services group to meet with the family again to make sure that A.R.P. was receiving all of the services to which he was entitled. (Tr. 452-453). An EEG in September 2011 was again normal. (Tr. 437).

A.R.P. was seen again at Cardinal Glennon in July 2012. It was noted that he had an arachnoid cyst of the brain.[4] He had "occasional staring spells but also has vivid hallucinations

---

[3] "Cortical dysplasia occurs when the top layer of the brain does not form properly. It is one of the most common causes of epilepsy. The most common type of cortical dysplasia is focal cortical dysplasia (FCD). . . . The most common symptom of cortical dysplasia is seizures. Some patients may also have problems with their ability to learn new things." https://www.cincinnatichildrens.org/health/c/cortical-dysplasia, visited on February 13, 2017.

[4] "Arachnoid cysts are the most common type of brain cyst. They are congenital lesions that occur as a result of the splitting of the arachnoid membrane. The cysts are fluid-filled sacs, not tumors, appearing in one of the three layers of tissue covering the central nervous system." Arachnoid cysts may or may not cause symptoms. http://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/pediatric_neurosurgery/conditions/arachnoid_cysts.html, visited on February 13, 2017.

with content regarding a deceased relative." He was not taking any anticonvulsant medications. An EEG was again normal. (Tr. 303).

A.R.P. received primary health care through the Southern Illinois Regional Wellness Center. In April 2008, it was noted that his speech was delayed and he was in speech therapy usually two times a week. (Tr. 357). In May 2010, shortly before his fifth birthday, he was seen for a school exam. He was noted to have no special health care needs and was not taking any medication. (Tr. 341). In May 2011, at a routine yearly visit, it was noted that he had no delays. (Tr. 324). However, in August 2011, his mother was concerned that he may have developmental delays with "tics." He had not had seizures, but he did have episodes of staring off into space. (Tr. 319). In July 2012, A.R.P.'s mother requested a referral because A.R.P. was not speaking or hearing well, and his coordination was not good. (Tr. 313).

### 4. Education Records

A.R.P. was evaluated by a school psychologist in conjunction with his special education placement in October 2011. Various psychological tests were administered. He was in the first grade and was receiving special education services as a student with a developmental delay. Testing on the Wechsler Intelligence Scale for Children showed that his nonverbal reasoning abilities were better developed than his verbal reasoning abilities. His verbal reasoning abilities were in the borderline range. His nonverbal reasoning abilities were in the low average range. His full scale IQ was in the low average range. The psychologist concluded that he had a "unique cognitive profile" which, along with his achievement data, warranted consideration of eligibility as a student with a specific learning disability. (Tr. 287-293).

The transcript contains two Individualized Education Program Conference reports.

The first conference took place in December 2011.  A.R.P. was in the first grade.  He had a "specific learning disability."  He functioned immaturely and lacked the necessary socialization skills for a structured school setting.  He moved a lot, in and out of his seat.  He could be easily distracted and distracted others around him.  In the classroom, he was functioning on a kindergarten to first grade level with assistance and accommodations.  His full scale IQ was 87.  It was determined that he was eligible for special education services in the areas of math reasoning and spelling based on a specific learning disability.  He had a "significant delay in spelling and math reasoning, including a unique cognitive learning profile."  (Tr. 266-281).

Another conference was held in December 2012, when A.R.P. was in the second grade.  Standardized testing showed that he was reading at the level of the eighth month of kindergarten.  His math scores were at the level of the ninth month of kindergarten.  It was determined that he should be placed in general education classes for art, music, PE, breakfast and lunch.  He should be placed in general education for math with supplementary aids such as grading on effort and work, modified grades, and review of directions.  He was to be in special education classed for reading, social studies, and science.  (Tr. 466-486).

    5.    **Teachers' Reports**

In September 2012, Reshay Yow, a special education teacher, completed a form at the request of the agency.  She evaluated A.R.P.'s status with regard to the six domains of functioning.  The form broke each domain into more detailed areas of functioning, and asked the teacher to rate the child from 1 (no problem) to 5 (very serious problem) as to each.

Ms. Yow rated A.R.P. as having no problem or a slight problem in all but one of the ten areas under the first domain, acquiring and using information, and an obvious problem as to the tenth area. She rated him as having no problem or a slight problem in all areas under the second domain, attending and completing tasks. She rated him as having a very serious problem in several areas under interacting and relating with others, and as having a very serious problem in several areas under caring for himself. In this domain, she noted that A.R.P. did not handle frustration appropriately and had short patience. He used poor judgment as to safety by throwing things when upset. Ms. Yow rated him as having no problems in the domain of moving about and manipulating objects. (Tr. 204-215).

Ms. Yow completed another such form in September 2013. This time, she rated him as having very serious problems in all areas under acquiring and using information, in three areas under attending and completing tasks, in two areas under interacting and relating with others, and in three areas under caring for himself or others. She again noted no problems in moving about and manipulating objects. (Tr. 252-256).

### 6.     Consultative Psychological Evaluation

Harry J. Deppe, Ph.D., performed a consultative psychological exam at the request of the agency in December 2012.

A.R.P.'s mother told Dr. Deppe that she had filed for disability benefits because A.R.P. "had a hole in his head when he was born." She also said that her brother had died, and A.R.P. told a doctor that he could hear her dead brother's voice. According to Dr. Deppe, A.R.P. had no trouble staying focused during the exam, and his responses were coherent and relevant. Dr. Deppe concluded that A.R.P.'s ability to complete tasks in a timely and efficient fashion was

normal for his chronological age.  He diagnosed simple grieving and adjustment disorder, both in remission, and low average intellectual functioning, by previous testing.  (Tr. 308-310).

      7.      **State Agency Consultants' Assessments**

Two state agency psychologists evaluated A.R.P. based on a review of the records.  In December 2012, Dr. Hudspeth opined that A.R.P. had no limitations in moving about and manipulating objects, and had less than marked limitations in all other domains.  Dr. Hudspeth indicated that A.R.P. had one "medically determinable impairment," that is, affective disorder.  He considered whether A.R.P. met or equaled the requirements of Listing 112.04, Mood Disorders.  He also noted that a neurologist had diagnosed him with "unspecified intellectual disabilities" and cortical dysplasia.  There is no mention of a diagnosis of ADHD in Dr. Hudspeth's report.  (Tr. 77-84).

In April 2013, Dr. Tin affirmed Dr. Hudspeth's opinion.  He agreed that A.R.P. had one medically determinable impairment, affective disorder.  Like Dr. Hudspeth, he considered whether A.R.P. met or equaled the requirements of Listing 112.04, Mood Disorders.  He also noted that medical records indicated that A.R.P. had been diagnosed with "unspecified intellectual disabilities and cortical dysplasia.  Dr. Tin did not mention a diagnosis of ADHD.  (Tr. 87-95).

## Analysis

Plaintiff argues that the ALJ erred in several respects in finding that A.R.P.'s condition did not functionally meet or equal a listed impairment.  One of the errors that plaintiff alleges is that the ALJ erred in failing to correctly identify his severe impairments.

The ALJ identified only one severe impairment at step two, ADHD. Plaintiff argues that he should also have identified focal cortical dysplasia, microcephaly and "unspecified intellectual disabilities" as severe impairments.

Defendant counters that any error at step two is harmless because the step two identification of severe impairments is only a threshold requirement, citing *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010). It is true that *Castile* holds that a failure to identify a particular impairment as "severe" at step two is harmless as long as the ALJ goes on to complete the sequential analysis, considering the "*aggregate* effect of the entire constellation of ailments—including those impairments that in isolation are not severe." *Castile, Ibid.* (emphasis in original)(internal citation omitted). Here, however, the ALJ evidently failed to consider possible effects of focal cortical dysplasia and microcephaly at all.

The ALJ noted in passing that A.R.P. had an arachnoid cyst of the brain and that his EEG tests were normal. (Tr. 52). He did not, however, identify focal cortical dysplasia and microcephaly as impairments or discuss their effects. Rather, the ALJ identified ADHD as plaintiff's only severe impairment. The ALJ did not cite to any diagnosis of ADHD in the record, and the Court's review of the transcript does not indicate that any doctor ever diagnosed A.R.P. with ADHD. Nevertheless, the ALJ discussed only the listing for ADHD, Listing 112.11, at step three of the sequential analysis.

The Commissioner argues that the ALJ implicitly considered the effects of focal cortical dysplasia and microcephaly because he relied on the opinions of Drs. Hudspeth and Tin, and they considered focal cortical dysplasia and intellectual disabilities. Doc. 30, p. 6. The Commissioner relies on *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004), in which the

[11]

Seventh Circuit held that, where the ALJ relied on the opinions of doctors who had considered the effects of obesity, consideration of obesity was "factored in" to the ALJ's decision.  There are several problems with this argument.

First, Drs. Hudspeth and Tin are psychologists, not medical doctors, and are therefore not qualified to assess the effects of physical impairments like focal cortical dysplasia and microcephaly.  In *Skarbek*, the ALJ relied on the opinions of medical doctors regarding the effects of plaintiff's physical impairments, including obesity.  *Skarbek* is therefore of limited relevance.  Not surprisingly, defendant has not cited a case wherein the Seventh Circuit has excused the failure to discuss the effects of a physical impairment because the ALJ relied on the opinion of a psychologist who considered the effects of a physical impairment.

More fundamentally, there is mismatch between the opinions of Drs. Hudspeth and Tin and the ALJ's conclusions.  The ALJ evaluated A.R.P. on the basis of ADHD, while the state agency psychologists evaluated him on the basis of an affective disorder.  The ALJ afforded "significant weight" to their opinions without reconciling the fact that they diagnosed and evaluated a completely different impairment than the one found by the ALJ.  (Tr. 45-46).

In a different case, the failure of the ALJ to identify focal cortical dysplasia and microcephaly as severe impairments might be excusable.  Here, however, not only did ALJ Armstrong fail to identify those impairments as severe, he apparently failed to consider their effects at all.  He also failed to consider the possible effects of the arachnoid cyst of the brain.  Further, the ALJ evaluated A.R.P. on the basis of ADHD, a diagnosis which does not appear in the medical evidence.

The Court concludes that the ALJ's decision is not supported by substantial evidence. In deciding whether A.R.P.'s impairments functionally met or equaled a listed impairment, ALJ Armstrong was required to "assess the interactive and cumulative effects" of all of A.R.P.s impairments. 20 C.F.R. §416.926a(a). He did not so, and consideration of the effects of physical impairments by psychologists does not serve to render his error harmless.

The Court does not mean to suggest that the ALJ was required to find that A.R.P. has functional limitations resulting from focal cortical dysplasia, microcephaly, or arachnoid cyst of the brain. However, he was required to consider the issue and explain how he resolved it, building a "logical bridge" from the evidence to his conclusion. Remand is required where, as here, the decision is without evidentiary support. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that A.R.P. was disabled at the relevant time or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying the application on behalf of A.R.P. for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is **DIRECTED** to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:**   2/27/2017

                                      *s/J. Phil Gilbert*
                                      **J. PHIL GILBERT**
                                      **UNITED STATES DISTRICT JUDGE**